1                                                        **'O'**    **JS-6**

8               UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEROME DAROYA,<br><br>        Plaintiff,<br><br>   v.<br><br>MARY JOSEPHINE DAROYA-<br>LUSHINA; and DOMINICK<br>RAMOS,<br><br>        Defendants. | CV 22-02695-RSWL-JCx<br><br>**ORDER re: Defendants'**<br>**Motion to Dismiss** [23] |

Plaintiff Jerome Daroya ("Plaintiff") initiated this Action [1] on April 22, 2022, against Defendants Mary Josephine Daroya-Lushina and Dominick Ramos (collectively, "Defendants").  Plaintiff brings a claim against Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), along with state law claims for conversion, breach of fiduciary duty, intentional interference with prospective economic advantage, constructive trust, and

1   violation of the California Business and Professions

2   Code.   Currently before the Court is Defendants' Motion

3   to Dismiss and Motion to Strike ("Motion") [23], made

4   pursuant to Rules 12(b)(1), (6), and 12(f) of the

5   Federal Rules of Civil Procedure.[1]

6       Having reviewed all papers submitted pertaining to

7   this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

8   the Court **GRANTS** Defendants' Motion to Strike the new

9   plaintiffs and claims added in the SAC and **GRANTS**

10  Defendant's Motion to Dismiss as to Plaintiff's RICO

11  claim **without leave to amend.**   Because the only federal

12  claim is subject to dismissal, the Court declines to

13  address the merits of Plaintiff's state law causes of

14  action.

15                   **I.   BACKGROUND**

16  **A.   Factual Background**

17  Plaintiff Daroya alleges the following in his Second

18  Amended Complaint ("SAC"):

19      Upon the death of their father, Plaintiff Daroya

20  and Defendant Mary Daroya-Lushina ("Daroya-Lushina")

21

22      [1] Plaintiffs argue that Defendant violated Rule 7-3 because
23  "Defendants' counsel did not even attempt to meet and confer with
    Plaintiffs' counsel until October 6, 2022 . . . ."  Plfs' Opp'n
24  to Defs' Mot. to Dismiss Plfs' Second Am. Compl. ("Opp'n") 6:21-
    23, ECF No. 26.  Regardless of whether this constituted a
25  violation of Rule 7-3, Plaintiffs were clearly not prejudiced
    because they were able to fully respond to Defendants' Motion.
26  See generally Opp'n.  Thus, the Court exercises its discretion to
    consider the Motion's merits.  See CarMax Auto Superstores Cal.
27  LLC v. Hernandez, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015).

28

inherited a property located at 21610 South Perry Street, Unit 15 in Carson, California ("the Property"). SAC ¶ 16, ECF No. 20.  On or about September 30, 2020, Plaintiff Daroya and Defendant Daroya-Lushina created a limited liability company known as Cookie and Kuya Enterprises, LLC ("CKE"), to hold their joint interest in the Property.  Id. ¶¶ 16-17.  Plaintiff Daroya and Defendant Daroya-Lushina each owned a 50% membership interest in CKE.  Id. ¶ 17.

In 2021, Defendants jointly undertook a fraudulent scheme to deprive Plaintiff Daroya of his interest in CKE, to sell the Property, and to divert the proceeds from the sale to themselves and away from Plaintiff. Id. ¶ 21.  On September 23, 2021, Ramos electronically filed a fraudulent Statement of Information with the California Secretary of State.  Id. ¶ 23.  This Statement of Information contained numerous falsehoods, including an altered mailing address for CKE and a statement that Defendant Daroya-Lushina was its sole manager.  Id.

Around the same time, Defendants contacted Opendoor, a company that makes cash offers for properties.  Id. ¶¶ 25-26.  Defendants submitted fraudulent documents to Opendoor, including a copy of CKE's Operating Agreement showing that Plaintiff Daroya had a 5% ownership interest in CKE rather than his actual 50% ownership interest.  Id. ¶¶ 27-28. Defendants submitted further documentation suggesting

that Plaintiff Daroya had surrendered all interest in CKE. Id. Defendant Daroya-Lushina proceeded to sell the Property to Opendoor for $496,000 and did not provide any share of the proceeds to Plaintiff. Id. ¶¶ 30-31.

Additionally, Defendant Daroya-Lushina falsely identified herself as the sole officer and director of Jose K. Daroya, CPA APC ("APC"), a company created by their father prior to his passing. Id. ¶¶ 34. Defendants allegedly obtained at least $16,879 through a Paycheck Protection Program loan and $86,000 in Economic Injury Disaster Loans on behalf of APC. Id. ¶ 33. Lenders are now seeking to collect payments for these loans from Plaintiff Daroya and his associated businesses. Id. ¶ 34. Defendants also attempted to fraudulently obtain a loan in the name of one of Plaintiff Daroya's business clients, causing the client to terminate his business relationship with Plaintiff. Id. ¶ 35.

Lastly, Defendant Daroya-Lushina falsely identified herself as the sole director and officer of JLA, a financial services firm owned by several shareholders, including Plaintiff Daroya and Defendant Daroya-Lushina. Id. ¶¶ 14, 36. Defendant Daroya-Lushina also changed JLA's mailing address to her own address, and received checks made payable to JLA. Id. ¶¶ 36-38. Defendants then forged endorsements on these checks and deposited them into their own accounts. Id. ¶ 38. Plaintiff

4

Daroya discovered that Defendants accessed JLA's website through the electronic submission of false information, changed the name of JLA's website, and changed access passwords to prevent Plaintiff Daroya and others from accessing the site.  Id. ¶ 39.

**B.   Procedural Background**

Plaintiff Daroya filed his Complaint [1] on April 22, 2022, and filed his FAC [12] on June 20, 2022. Defendants filed a Motion to Dismiss [13] on July 11, 2022, which this Court granted [19] with leave to amend on August 16, 2022.  Plaintiff then filed his SAC [20] on September 16, 2022.  Defendants filed the instant Motion [23] on October 10, 2022.  Plaintiff opposed [26] the Motion on October 18, 2022, and Defendants replied [27] on October 24, 2022.

## II.   DISCUSSION

**A.   Legal Standard**

1.   Rule 12(f) Motion to Strike

Rule 12(f) provides that a court may, by motion or on its own initiative, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.

1  1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994)).

2  "Motions to strike are generally disfavored."  <u>Leghorn</u>

3  <u>v. Wells Fargo Bank, N.A.</u>, 950 F. Supp. 2d 1093, 1122

4  (N.D. Cal. 2013) (citation omitted); <u>see also</u> <u>Sapiro v.</u>

5  <u>Encompass Ins.</u>, 221 F.R.D. 513, 518 (N.D. Cal. 2004)

6  ("Courts have long disfavored Rule 12(f) motions,

7  granting them only when necessary to discourage parties

8  from making completely tendentious or spurious

9  allegations.").

10      "In ruling on a motion to strike under Rule 12(f),

11  the court must view the pleading in the light most

12  favorable to the nonmoving party."  <u>Cholakyan v.</u>

13  <u>Mercedes-Benz USA, LLC</u>, 796 F. Supp. 2d 1220, 1245 (C.D.

14  Cal. 2011).  "[B]efore granting such a motion . . . ,

15  the court must be satisfied that there are no questions

16  of fact, that the [claim or] defense is insufficient as

17  a matter of law, and that under no circumstance could

18  [it] succeed."  <u>Id.</u> (citing <u>Tristar Pictures, Inc. v.</u>

19  <u>Del Taco, Inc.</u>, No. CV 99-07655 DDP(Ex), 1999 WL

20  33260839, at *1 (C.D. Cal. Aug. 31, 1999)).  "[C]ourts

21  frequently require the moving party to demonstrate

22  prejudice before granting the requested relief, and

23  ultimately whether to grant a motion to strike falls on

24  the sound discretion of the district court."  <u>Cook v.</u>

25  <u>County of Los Angeles</u>, No. CV 19-2417 JVS (KLSx), 2021

26  WL 1502704, at *2 (C.D. Cal. Mar. 31, 2021) (internal

27  quotation marks and citation omitted).

28  ///

1     2.   <u>Rule 12(b)(6) Motion to Dismiss</u>

2     Rule 12(b)(6) of the Federal Rules of Civil

3 Procedure allows a party to move for dismissal of one or

4 more claims if the pleading fails to state a claim upon

5 which relief can be granted. Fed. R. Civ. P. 12(b)(6).

6 A complaint must "contain sufficient factual matter,

7 accepted as true, to 'state a claim to relief that is

8 plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S.

9 662, 678 (2009) (citation omitted). Dismissal is

10 warranted for "lack of a cognizable legal theory or the

11 absence of sufficient facts alleged under a cognizable

12 legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901

13 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

14     In ruling on a 12(b)(6) motion, a court may

15 generally consider only allegations contained in the

16 pleadings, exhibits attached to the complaint, and

17 matters properly subject to judicial notice. <u>Swartz v.</u>

18 <u>KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). A court

19 must presume that all material allegations in the

20 complaint are true and construe them in the light most

21 favorable to the plaintiff. <u>Klarfeld v. United States</u>,

22 944 F.2d 583, 585 (9th Cir. 1991). While a complaint

23 need not contain detailed factual allegations, a

24 plaintiff must provide more than "labels and

25 conclusions" or "a formulaic recitation of the elements

26 of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550

27 U.S. 544, 555 (2007). The question is not whether the

28 plaintiff will ultimately prevail, but whether the

plaintiff is entitled to present evidence to support the claims.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

   3.  Rule 12(b)(1) Motion to Dismiss

   Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a litigant to seek dismissal of an action for lack of subject matter jurisdiction.  Under 28 U.S.C. § 1367, a court has supplemental jurisdiction over all claims that form part of the same case or controversy as claims over which the court has original jurisdiction.  However, a district court may decline to exercise supplemental jurisdiction over a state law claim when all claims over which it has original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  This decision should be informed by the values of economy, convenience, fairness, and comity. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1996).

**B.  Analysis**

   1.  Motion to Strike

   The Court granted Defendants' previous motion to dismiss with leave to amend, and Plaintiff Daroya submitted a Second Amended Complaint ("SAC") shortly thereafter.  Plaintiff amended his Complaint to alter the preexisting claims and to add three new plaintiffs, a RICO conspiracy claim, two more conversion claims, and an interference with prospective economic advantage

claim.  See generally SAC.  Defendants argue that these
new parties and allegations are "outside the scope of
the Court's Order and an impermissible attempt to change
factual allegations without leave of Court as required
under Rule 15."  Mem. of P. & A. in Supp. of Defs.' Mot.
to Dismiss and to Strike ("Mem."), 4:3-9, ECF No. 23-1.
In response, Plaintiff Daroya argues that adding
additional plaintiffs cured the deficient RICO claim,
and thus falls within the scope of the Court's August
16, 2022 Order.  Opp'n 7:13-8:12.  Nonetheless,
Plaintiffs concede that, "[a]dmittedly, Plaintiffs
should have filed a motion requesting leave from the
Court to add additional claims," but contend that their
failure to request leave "was harmless and should not
lead to dismiss of the claims."  Id. 8:9-12.

Federal Rule of Civil Procedure 15(a)(1) provides
that a party may amend its pleading once as a matter of
course within "(A) [twenty-one] days after serving it,
or (B) if the pleading is one to which a responsive
pleading is required, [twenty-one] days after service of
a responsive pleading or [twenty-one] days after service
of a motion under Rule 12(b), (e), or (f), whichever is
earlier."  Plaintiff filed his initial Complaint in
April 2022, and more than twenty-one days have passed
since Plaintiff served Defendants in May 2022.  See
generally Compl., ECF No 1; Proof of Service Upon Def.
Mary Josephine Daroya-Lushina, ECF No. 9; Proof of
Service Upon Def. Dominick Ramos, ECF No. 10.  Plaintiff

then filed a First Amended Complaint in June 2022, before Defendants filed their initial Motion to Dismiss in July 2022.  See generally First Am. Compl., ECF No. 12; Defs.' Mot. to Dismiss Pl.'s First Am. Compl., ECF No. 13.  Since Plaintiff has already amended his Complaint once as a matter of course, he requires leave of this Court for further amendments.

In Wehlage v. EmpRes Healthcare Incorporated, the court granted the defendants' initial motion to dismiss with leave to amend, directing the plaintiff to only "add alter ego allegations" to one specific claim to show she had standing.  821 F. Supp. 2d 1122, 1125 (N.D. Cal. 2011).  The plaintiff proceeded to amend her complaint to add new plaintiffs and defendants.  Id. There, the court held that the plaintiff, who could no longer amend as a matter of course under Rule 15, had exceeded the scope of the court's order.  Id. Accordingly, the court granted the defendants' motion to strike the added parties and claims.  Id.

Similarly, in Gerritson v. Warner Brothers Entertainment Incorporated, the court dismissed the plaintiff's claim with leave to amend to remedy specified deficiencies in her preexisting claims. 116 F. Supp. 3d 1104, 1110-19, 1123-25 (C.D. Cal. 2015). The plaintiff thereafter amended her complaint to include new claims, which the court dismissed as exceeding the scope of its order.  Id. at 1124-25; see, e.g., DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-

1   LHK, 2010 WL 4285006, *3 (N.D. Cal. Oct. 22, 2010) ("In
2   cases like this one . . . where leave to amend is given
3   to cure deficiencies in certain specified claims, courts
4   have agreed that new claims alleged for the first time
5   in the amended pleading should be dismissed or
6   stricken"); Kennedy v. Full Tilt Poker, No. CV 09-07964
7   MMM (AGRx), 2010 WL 3984749, *1 (C.D. Cal. Oct. 12,
8   2010) (noting that the court had stricken a third
9   amended complaint because plaintiffs' new claims and the
10  addition of new defendants "exceeded the authorization
11  to amend the court granted" and plaintiffs had not
12  sought leave to add new claims or defendants as required
13  by Rule 15).

14      In its August 16, 2022 Order, the Court granted
15  Plaintiff leave to amend his RICO claim and instructed
16  that Plaintiff "could allege new facts to cure the
17  deficiencies" in his RICO claim.  See Order Granting
18  Defs.' Mot. to Dismiss Plf's First Am. Compl. ("Order")
19  12:19-13:7, ECF No. 19.  Just as in Wehlage and
20  Gerritsen, Plaintiff was not granted leave to add new
21  parties and claims to his action and is attempting to
22  amend his Complaint without leave of the Court.
23  Plaintiff, however, contends that adding new plaintiffs
24  is tantamount to alleging new facts to cure his lack of
25  standing.  Opp'n 7:13-8:12.  But this interpretation of
26  the August 16, 2022 Order and the meaning of "allege new
27  facts," is too much of a stretch.  Had the Court
28  intended to grant Plaintiff leave to add new parties,

the Court would have specified as such, rather than
directing Plaintiff to "allege new facts."  Order 13:4-
6.  Accordingly, Plaintiff's amendments exceed the scope
of the Court's August 16, 2022 Order and the Court
**GRANTS** Defendants' Motion to Strike the added plaintiffs
and claims.  Plaintiff's new factual allegations
pertaining to his RICO claim are not stricken.

    2.   Motion to Dismiss — RICO Claim

    The RICO statute makes it unlawful for any person
to conduct or participate in an enterprise's affairs
through a pattern of racketeering activity.  18 U.S.C. §
1962(c).  To state a claim under RICO, Plaintiff must
allege facts establishing: "(1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering
activity (known as 'predicate acts') (5) causing injury
to plaintiff's 'business or property.'"  Living Designs,
Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361
(9th Cir. 2005) (quoting Grimmett v. Brown, 75 F.3d 506,
510 (9th Cir. 1996)).

    Defendants argue that the Court must dismiss
Plaintiff's remaining RICO claim because the SAC fails
to allege: (1) the requisite predicate acts; (2) a
pattern of racketeering activity; (3) a pattern of
racketeering; and (4) an enterprise.  See Mem. 6:11-
10:27.  The Court finds that Plaintiff's RICO claim
fails because the SAC does not allege a cognizable RICO
injury that was proximately caused by a pattern of
predicate acts.  The Court therefore **GRANTS** Defendant's

1  Motion as to Plaintiff's RICO cause of action.

2          a.   <u>Enterprise</u>

3      An "enterprise" includes "any individual,
4  partnership, corporation, association, or other legal
5  entity, and any union or group of individuals associated
6  in fact although not a legal entity."  18 U.S.C.
7  § 1961(4).  "Under RICO, two types of associations meet
8  the definition of enterprise: The first encompasses
9  organizations such as corporations and partnerships, and
10 other legal entities.  The second covers any union or
11 group of individuals associated in fact although not a
12 legal entity."  <u>Shaw v. Nissan N. Am., Inc.</u>, 220 F.
13 Supp. 3d 1046, 1053 (C.D. Cal. 2016) (internal quotation
14 marks omitted) (quoting <u>United States v. Turkette</u>, 452
15 U.S. 576, 581–82 (1981)).

16     Here, Plaintiff argues that the SAC alleges three
17 theories of enterprises.  <u>See</u> Opp'n 13:22-14:18, ECF
18 No. 26.  First, it alleges that Daroya-Lushina and Ramos
19 acted through CKE, which the Court previously found to
20 be a sufficiently alleged enterprise.  <u>Id.</u> at 14:10-12;
21 Order 7:22-8:7.  Second, it alleges the existence of an
22 enterprise consisting of Defendant Daroya-Lushina,
23 Defendant Ramos, CKE, and JLA.  <u>Id.</u> at 14:13-16.  Third,
24 Plaintiff argues that in the alternative, two separate
25 enterprises existed consisting of Defendants and CKE,
26 and Defendants and JLA.  <u>Id.</u> at 14:15-18.  The Court
27 analyzes the allegations pertaining to each potential
28 enterprise in turn.

As before, with regard to Defendants' alleged infiltration of CKE, the Court finds that Plaintiff has adequately alleged the existence of an enterprise.  A RICO enterprise must be "an entity separate and apart from the pattern of [racketeering] activity in which it engages." Turkette, 452 U.S. at 583.  The SAC describes CKE as a legitimate LLC, which Defendants infiltrated and conducted through a pattern of racketeering activity.  See SAC ¶ 17.  CKE therefore existed separately from the alleged racketeering activity for which it was used, and thus constitutes a RICO enterprise.  See United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc., 837 F.2d 356, 362-64 (9th Cir. 1988).

Plaintiff's second argument that Defendant Daroya-Lushina, Defendant Ramos, CKE, and JLA constitute an enterprise is equivalent to alleging an association-in-fact enterprise since Plaintiff does not contend that these entities and individuals are a legal entity.  And Plaintiff's allegations of this association-in-fact enterprise are insufficient.

An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583.  The enterprise must have some sort of structure or framework, meaning there must be "relationships among those associated with the enterprise." Boyle v. United States, 556 U.S. 938, 946 (2009).  Here, the SAC does

14

not allege any relationship between CKE and JLA.  While
Plaintiff alleges that Defendant Daroya-Lushina and
Defendant Ramos used both entities to commit
racketeering activity, the acts involving each entity
were completely unrelated to one another.  The two
companies therefore had no common purpose, and they were
not associated together to form "a vehicle for the
commission of two or more predicate acts."  See Odom v.
Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007).
Plaintiff therefore fails to allege the existence of an
association-in-fact enterprise.

Finally, with regard to Defendants' alleged
infiltration of JLA, Plaintiff has adequately alleged
the existence of an enterprise.  Just as with CKE, the
SAC described JLA as a legitimate corporation, which
Defendants infiltrated and conducted a pattern of
racketeering activity through.  See SAC 14, 36-39.  JLA
therefore existed separately from the alleged
racketeering activity for which it was used, and thus
constitutes a RICO enterprise.  See United Energy Owners
Comm., Inc., 837 F.2d at 362-64.

Since Plaintiff has sufficiently alleged the
existence of enterprises through CKE and JLA only, the
Court analyzes the predicate acts discussed in the SAC
pertaining solely to CKE and JLA.

> b.   Injury Caused by Predicate Acts

A RICO claim requires a pattern of two or more
predicate acts that cause injury to the plaintiff's

business or property.  <u>Living Designs</u>, 431 F.3d at 361.

A predicate act is "any act indictable under any of the

statutory provisions listed in 18 U.S.C. § 1961(1)."  <u>In</u>

<u>re Toyota Motor Corp.</u>, 785 F. Supp. 2d 883, 918

(C.D. Cal. 2011).  Here, the predicate acts Plaintiff

alleges are mail fraud in violation of 18 U.S.C. § 1341

and wire fraud in violation of 18 U.S.C. § 1343.  <u>See</u>

SAC ¶ 46.

> i.  <u>CKE Enterprise</u>

Plaintiff alleges that Defendants committed mail

and wire fraud through the CKE enterprise for

essentially two purposes.  First, Ramos engaged in a

wire fraud to falsely identify Daroya-Lushina as the

sole manager of CKE.  SAC ¶ 23.  Second, Defendants

jointly engaged in mail or wire fraud to sell the

Property, which was CKE's main asset, and to collect the

proceeds of the sale for themselves.  <u>Id.</u> ¶¶ 28, 30.  In

turn, Plaintiff suffered two distinct injuries.  The

first act of wire fraud deprived Plaintiff of his

rightful interest in CKE.  <u>Id.</u> ¶ 21.  The sale of the

Property deprived Plaintiff of his rightful share in the

proceeds of the sale.  <u>Id.</u>

The Court previously noted that "[w]hile

Plaintiff's first injury — loss of membership interest

in CKE — may be a cognizable RICO injury, this harm

arose from a single act of wire fraud."  Order 9:26-28.

Indeed, the single predicate act that Plaintiff alleged

in his First Amended Complaint was insufficient to

1    establish a pattern of racketeering activity.   18 U.S.C.

2    § 1961(5) ("[A] 'pattern of racketeering activity'

3    requires at least two acts of racketeering activity.").

4       Now, in his Second Amended Complaint, Plaintiff

5    states that while he "specifically identif[ies]

6    falsified documents and communications in a good faith

7    effort to comply with Rule 9(b)," Plaintiff currently

8    does not have in his "possession, custody and/or control

9    all of the relevant [e-mails], communications, and/or

10   false documents that [he] believe[s] were

11   circulated/transmitted by and between Defendants and

12   various third parties in furtherance of their fraudulent

13   scheme."   SAC ¶ 22.   Plaintiff remarks that, regardless,

14   he is informed and believes that Defendants were each

15   "responsible for sending multiple communications and

16   submitting multiple documents" to perpetuate their

17   fraudulent scheme, "but cannot identify with certainty

18   which was personally responsible for sending each such

19   communication or document until certain discovery is

20   permitted."   Id.

21      Nonetheless, Plaintiff proceeds to plead that on or

22   about April 20, 2022, "Defendants filed an additional

23   false Statement of Information with the California

24   Secretary of State," which Plaintiff believes Defendants

25   submitted "electronically through the internet."   Id. at

26   24.   But it is unclear how this act causes Plaintiff

27   harm.   By April 20, 2022, Defendants had already filed

28   an allegedly false Statement of Information with the

California Secretary of State that deprived Plaintiff of his interest in CKE.  <u>See</u> SAC ¶ 21, 23 (Explaining that on September 23, 2021, Defendants caused a false Statement of Interest to be filed, effectively depriving Plaintiff of his interest in CKE).  Thus, once again, the merit of Plaintiff's RICO claim turns on whether Plaintiff has alleged that Defendants' other predicate acts — related to the sale of the Property — caused a cognizable RICO injury.

The Court concludes that Plaintiff has not, and Plaintiff's RICO claim therefore fails.  Because this conclusion is dispositive, the Court does not reach Defendants' other arguments as to the merits of the RICO claim.

To allege a cognizable RICO injury, Plaintiff must show "a harm to a specific business or property interest" that was caused directly by Defendants' RICO violation.  <u>In re ZF-TRW Airbag Control Units Prods. Liab. Litig.</u>, No. LA ML19-02905 JAK (FFMx), 2022 WL 522484, at *59-60 (C.D. Cal. Feb. 9, 2022) (citations omitted).  Here, Plaintiff alleges that Defendants' sale of the Property deprived Plaintiff of his rightful share in the sale's proceeds.  SAC ¶ 21.  Plaintiff argues that because he has a 50% ownership interest in CKE, he is entitled to at least 50% of the proceeds from the sale of CKE's main asset.  Opp'n 15:10-12.

As discussed in the August 16, 2022 Order, under California law, "members of [an] LLC hold no direct

ownership interest in the company's assets." PacLink
Commc'ns Int'l, Inc. v. Superior Ct., 109 Cal. Rptr. 2d
436, 440 (Cal. Ct. App. 2001).  Thus, "the members
cannot be directly injured when the company is
improperly deprived of those assets."  Id.  That
deprivation "constitutes an injury to the company
itself," and any action brought by an individual member
must be derivative in nature on the company's behalf.
Id.  Here, Plaintiff's alleged deprivation of his fair
share of the proceeds is only incidental to the injury
caused to CKE itself.  See PacLink, 109 Cal. Rptr. 2d at
441.  Because the injury alleged in the SAC was one to
the LLC and not to Plaintiff directly, Plaintiff lacks
standing to assert it.  See Sparling v. Hoffman Const.
Co., Inc., 864 F.2d 635, 640-41 (9th Cir. 1988)
(concluding that shareholder plaintiff lacked RICO
standing where RICO claims were based on injury to
corporation).  While Plaintiff amended his Complaint to
include CKE and two other entities as plaintiffs,
perhaps in an attempt to establish standing, this Court
did not grant leave to add parties and has stricken the
added parties.  Accordingly, Plaintiff still bears the
burden of pleading he has standing.  Plaintiff has
therefore failed to assert a cognizable RICO injury
caused by the predicate acts committed by Defendants in
selling the Property.
///
///

ii.   <u>JLA Enterprise</u>

Plaintiff fails to allege that Defendants used JLA to commit predicate acts causing him injury.  Plaintiff contends that Defendants committed theft, fraud, wire and/or mail fraud through JLA.  SAC ¶ 46.  To support these claims, Plaintiff alleges that Defendants electronically filed a false Statement of Information with the California Secretary of State identifying Daroya-Lushina as the sole director and officer of JLA and altering JLA's mailing address.  <u>Id.</u> ¶ 36. Plaintiff contends that as a result, "at least several checks made payable to JLA from JLA's clients" were improperly forwarded to Defendants, at which time Defendants forged endorsements on those checks and deposited the funds into their own accounts.  <u>Id.</u> ¶ 38. Finally, Defendants allegedly changed the passwords to JLA's websites and altered the sites through "the electronic submission of false information."  <u>Id.</u> ¶ 39.

Just as with CKE, any injury caused by these activities was sustained by JLA, not by Plaintiff in his personal capacity.  <u>See</u> <u>Sparling</u>, 864 F.2d at 640-41. Therefore, Plaintiff has failed to allege a pattern of predicate acts causing him injury.

In sum, while Plaintiff may have properly alleged the existence of enterprises and the requisite number of predicate acts, Plaintiff has failed to allege that those acts caused harm to Plaintiff's business or property.  Plaintiff therefore fails to state a civil

RICO claim.

### 3. Supplemental Jurisdiction

Defendants further request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Mot. 13:14-14:14. A district court may decline to exercise supplemental jurisdiction over state law claims where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Here, Plaintiff's remaining causes of action are state law claims within the Court's discretionary supplemental jurisdiction. Because Plaintiff's federal RICO conspiracy claim is stricken, and his federal RICO claim is subject to dismissal, the Court declines to address the Motion's arguments as to Plaintiff's state law claims. Plaintiff failed to amend the FAC to properly state a federal claim for relief, so the Court dismisses the remaining state law claims. See Nguyen v. Global Equip. Servs. & Mfg., Inc., No. 18-cv-01824-NC, 2018 WL 10758158, at *6 (N.D. Cal. Oct. 2, 2018).

### 4. Leave to Amend

"The court should give leave [to amend] freely when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" United States v.

1   _Webb_, 655 F.2d 977, 979 (9th Cir. 1981).  Against this

2   extremely liberal standard, the Court may consider "the

3   presence of any of four factors: bad faith, undue delay,

4   prejudice to the opposing party, and/or futility."

5   _Owens v. Kaiser Found. Health Plan, Inc._, 244 F.3d 708,

6   712 (9th Cir. 2001).

7        Here, Plaintiff requests leave to amend to include

8   new claims or parties, or to cure the SAC's

9   deficiencies.  _See_ Opp'n 16:11-19.  Plaintiff amended

10  his Complaint as a matter of course and the Court

11  already granted Plaintiff leave to amend his FAC to

12  state a cognizable RICO claim.  Plaintiff has had

13  multiple opportunities to refine his claim, yet still

14  has not stated a plausible claim for relief.  _See_ _Allen_

15  _v. City of Beverly Hills_, 911 F.2d 367, 373 (9th Cir.

16  1990) ("The district court's discretion to deny leave to

17  amend is particularly broad where plaintiff has

18  previously amended the complaint.").  The Court

19  therefore dismisses Plaintiff's RICO claim **without leave**

20  **to amend.**

21                    **III.  CONCLUSION**

22       Based on the foregoing, the Court **GRANTS**

23  Defendants' Motion to Strike the new plaintiffs and

24  claims added in the SAC and **GRANTS** Defendant's Motion to

25  Dismiss as to Plaintiff's RICO claim **without leave to**

26  **amend.**

27       Because the only federal claim is dismissed, the

28  Court declines to exercise supplemental jurisdiction

over Plaintiff's state law causes of action.
Accordingly, the Court does not address the merits of
Plaintiff's state law causes of action.  Therefore,
there are no claims remaining and the Court closes this
case.

**IT IS SO ORDERED.**

DATED: December 12, 2022

/S/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge